FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 19, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| APRIL M.,<br><br>                             Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                           Defendant. | NO:  4:22-CV-5095-RMP<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S BRIEF |

BEFORE THE COURT, without oral argument, is a Motion for Summary Judgment from Plaintiff April M.[1], ECF No. 9, and brief in opposition from Defendant the Commissioner of Social Security (the "Commissioner"), ECF No. 13. Plaintiff seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), of the Commissioner's denial of her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act").  *See* ECF No. 9 at 2.

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and last initial.

Having considered the parties' submissions, the administrative record, and the applicable law, the Court is fully informed.  For the reasons set forth below, the Court denies judgment for Plaintiff and directs entry of judgment in favor of the Commissioner.

## BACKGROUND

### *General Context*

Plaintiff protectively filed for DIB on March 10, 2020, alleging an onset date of July 1, 2019, and with a date last insured of December 31, 2024.  *See* Administrative Record ("AR")[2] 16, 18, 189–95, 222.  Plaintiff was 51 years old on the alleged disability onset date and asserted that she was unable to work due to high blood pressure; migraines; bilateral ankle, foot, and knee pain; insomnia; depression; and anxiety.  AR 189–95, 215–16.  Plaintiff alleged that she stopped working on July 1, 2019, because of her conditions.  AR 216.  Plaintiff's application was denied initially and upon reconsideration, and Plaintiff requested a hearing.  *See* AR 119–20.

On February 17, 2022, Plaintiff appeared by telephone, represented by her attorney Chad Hatfield, at a hearing held by Administrative Law Judge ("ALJ") Stewart Stallings from Spokane, Washington.  AR 31–75.  The ALJ heard from

[2] The Administrative Record is filed at ECF No. 7.

Plaintiff as well as vocational expert ("VE") Erin Martz. AR 35–61. ALJ Stallings issued an unfavorable decision on April 7, 2022, and the Appeals Council denied review. AR 1–6, 16–26.

***ALJ's Decision***

Applying the five-step evaluation process, ALJ Stallings found:

**Step one:** Plaintiff meets the insured status requirements of the Act through December 31, 2024. AR 18. Plaintiff did not engage in substantial gainful activity since her alleged onset date of July 1, 2019. AR 18 (citing 20 C.F.R. § 404.1571 *et seq*).

**Step two:** Plaintiff has the following severe impairments that are medically determinable and significantly limit her ability to perform basic work activities: psoriasis with psoriatic arthritis, hypertension, anxiety, and depression, pursuant to 20 C.F.R. §§ 404.1520(c). AR 19. The ALJ further found that Plaintiff has non-severe impairments in the form of migraines and angioedema and that, although treatment notes record a diagnosis of fibromyalgia, "[t]he requirements of [Social Security Ruling ("SSR")] 12-2p have not been met to establish a medically determinable impairment of fibromyalgia, however, and fibromyalgia symptoms have not been a focus of treatment with the claimant's rheumatologist. AR 19 (citing AR 473, 479). In addition, the ALJ memorialized that he considered all of

Plaintiff's medically-determinable impairments, including those that are not severe, when assessing Plaintiff's residual functional capacity.  AR 19.

**Step three:** The ALJ concluded that Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 19 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  The ALJ memorialized that Plaintiff's physical impairments did not meet, or medically equal, listings 1.18 for abnormality of a major joint, 14.09 for inflammatory arthritis, 12.04 for depression, or 12.06 for anxiety-related disorders.  AR 19–20.  With respect to Plaintiff's mental health impairments, the ALJ discussed the "paragraph B" criteria and found Plaintiff mildly limited in understanding, remembering, or applying information and in adapting or managing oneself.  AR 20.  The ALJ also found Plaintiff moderately limited in: interacting with others and concentrating, persisting, or maintaining pace; and mildly limited in: understanding, remembering, or applying information and adapting or managing oneself.  AR 20.  Therefore, the ALJ did not find that Plaintiff had an extreme limitation or two marked limitations in a broad area of functioning. AR 20.  In addition, the ALJ found that the "paragraph C" criteria were not satisfied. AR 20.

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with certain exceptions. AR 21. The ALJ restricted Plaintiff's RFC as follows:

> The claimant cannot climb ladders, ropes, or scaffolds, but she can occasionally climb ramps and stairs as well as occasionally stoop, crouch, kneel, and crawl. The claimant can frequently handle and finger. She cannot be exposed to extreme cold, extreme heat, wetness, or humidity. She cannot be exposed to dangerous moving machinery or unprotected heights. The claimant must avoid work that requires a production rate pace, such as a nonworker-controlled conveyor belt. She can have occasional in-person interaction with the public.

AR 21.

In determining Plaintiff's RFC, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 21–22.

**Step four:** The ALJ found that Plaintiff is capable of performing past relevant work as a secretary, as that work does not require the performance of work-related activities precluded by Plaintiff's RFC. AR 25 (citing 20 C.F.R. § 404.1565).

**Step five:** The ALJ found that Plaintiff has not been under a disability, as defined in the SSA from July 1, 2019, through the date of this decision. AR 25 (citing 20 C.F.R. § 404.1520(f)).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S BRIEF ~ 5

1    Plaintiff sought review of the ALJ's decision in this Court. ECF No. 1.

2                              **LEGAL STANDARD**

3    ***Standard of Review***

4    Congress has provided a limited scope of judicial review of the

5    Commissioner's decision. 42 U.S.C. § 405(g). A court may set aside the

6    Commissioner's denial of benefits only if the ALJ's determination was based on

7    legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d

8    993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)). "The [Commissioner's]

9    determination that a claimant is not disabled will be upheld if the findings of fact are

10   supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.

11   1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere

12   scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112,

13   1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir.

14   1989). Substantial evidence "means such evidence as a reasonable mind might

15   accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,

16   401 (1971) (citations omitted). "[S]uch inferences and conclusions as the

17   [Commissioner] may reasonably draw from the evidence" also will be upheld. *Mark*

18   *v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the

19   record, not just the evidence supporting the decisions of the Commissioner.

20   *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

21

A decision supported by substantial evidence still will be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

### Definition of Disability

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if the impairments are of such severity that the claimant is not only unable to do their previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

/ / /

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S BRIEF ~ 7

1   ***Sequential Evaluation Process***

2       The Commissioner has established a five-step sequential evaluation process

3   for determining whether a claimant is disabled.  20 C.F.R. § 404.1520.  Step one

4   determines if they are engaged in substantial gainful activities.  If the claimant is

5   engaged in substantial gainful activities, benefits are denied.  20 C.F.R. §

6   404.1520(a)(4)(i).

7       If the claimant is not engaged in substantial gainful activities, the decision

8   maker proceeds to step two and determines whether the claimant has a medically

9   severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).

10  If the claimant does not have a severe impairment or combination of impairments,

11  the disability claim is denied.

12      If the impairment is severe, the evaluation proceeds to the third step, which

13  compares the claimant's impairment with listed impairments acknowledged by the

14  Commissioner to be so severe as to preclude any gainful activity.  20 C.F.R. §

15  404.1520(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.  If the impairment

16  meets or equals one of the listed impairments, the claimant is conclusively presumed

17  to be disabled.

18      If the impairment is not one conclusively presumed to be disabling, the

19  evaluation proceeds to the fourth step, which determines whether the impairment

20  prevents the claimant from performing work that they have performed in the past.  If

21

the claimant can perform their previous work, the claimant is not disabled. 20

C.F.R. § 404.1520(a)(4)(iv). At this step, the claimant's RFC assessment is

considered.

If the claimant cannot perform this work, the fifth and final step in the process

determines whether the claimant is able to perform other work in the national

economy considering their residual functional capacity and age, education, and past

work experience. 20 C.F.R. § 404.1520(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137,

142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie

case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th

Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden

is met once the claimant establishes that a physical or mental impairment prevents

them from engaging in their previous occupation. *Meanel*, 172 F.3d at 1113. The

burden then shifts, at step five, to the Commissioner to show that (1) the claimant

can perform other substantial gainful activity, and (2) a "significant number of jobs

exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722

F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

Plaintiff's Motion for Summary Judgment raises the following issues

regarding the ALJ's decision:

1.    Did the ALJ erroneously assess the medical source opinions?

2.    Did the ALJ conduct a deficient analysis at step three?

3.    Did the ALJ erroneously discount Plaintiff's subjective complaints?

4.    Did the ALJ fail to conduct an adequate analysis of Plaintiff's RFC at steps four and five?

### *Medical Source Opinions*

Plaintiff argues that the ALJ erroneously evaluated three medical opinions: from Plaintiff's treating physician assistant Hiep Nguyen, PA-C; treating psychologist Nargis Mozafari, PsyD.; and examining psychologist Dennis G. Dyck, PhD.  ECF No. 9 at 9–16.

The Commissioner defends the ALJ's treatment of the medical opinion evidence, arguing that the ALJ properly considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 C.F.R. § 404.1520c."  ECF No. 13 at 4.

The regulations that took effect on March 27, 2017, provide a new framework for the ALJ's consideration of medical opinion evidence, and require the ALJ to articulate how persuasive he finds all medical opinions in the record, without any hierarchy of weight afforded to different medical sources.  *See* Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).  Instead, for each source of a medical opinion, the ALJ must consider several factors, including supportability, consistency, the source's relationship with the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S BRIEF ~ 10

claimant, any specialization of the source, and other factors such as the source's familiarity with other evidence in the claim or an understanding of Social Security's disability program.  20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the "most important" factors, and the ALJ must articulate how he considered those factors in determining the persuasiveness of each medical opinion or prior administrative medical finding.  20 C.F.R. § 404.1520c(b)(2).  With respect to these two factors, the regulations provide that an opinion is more persuasive in relation to how "relevant the objective medical evidence and supporting explanations presented" and how "consistent" with evidence from other sources the medical opinion is.  20 C.F.R. § 404.1520c(c)(1).  The ALJ may explain how he considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record.  20 C.F.R. § 404.1520c(b)(2), (3).  Courts also must continue to consider whether the ALJ's finding is supported by substantial evidence.  *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

Prior to revision of the regulations, the Ninth Circuit required an ALJ to provide clear and convincing reasons to reject an uncontradicted treating or examining physician's opinion and provide specific and legitimate reasons where the record contains a contradictory opinion.  *See Revels v. Berryhill*, 874 F.3d 648, 654

(9th Cir. 2017). However, the Ninth Circuit has held that the Social Security regulations revised in March 2017 are "clearly irreconcilable with [past Ninth Circuit] caselaw according to special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." *Woods v. Kijakazi*, No. 21-35458, 2022 U.S. App. LEXIS 10977, at *14 (9th Cir. Apr. 22, 2022). The Ninth Circuit continued that the "requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, is likewise incompatible with the revised regulations." *Id.* at *15 (internal citation omitted).

Accordingly, as Plaintiff's claim was filed after the new regulations took effect, the Court refers to the standard and considerations set forth by the revised rules for evaluating medical evidence. *See* AR 16, 18, 189–95.

### **PA Nguyen**

Plaintiff argues that the ALJ erred by failing to properly assess the supportability or consistency of PA Nguyen's disabling assessment. ECF No. 9 at 10. Plaintiff adds that "[c]ontrary to the ALJ's findings, PA-C Nguyen never observed that the claimant's pain is completely managed with medication." *Id.* Plaintiff cites to PA Nguyen's findings that Plaintiff's back/joint pain is evident upon palpation, that Plaintiff exhibits reduced range of motion, and that Plaintiff suffers swelling in her affected joints. *Id.* Plaintiff argues that the physical

symptoms found by PA Nguyen, "considered in conjunction with her depression, anxiety, and bipolar disorder (a diagnosis the ALJ completely overlooked)," support PA Nguyen's twelve-to-twenty percent off-task limitation. *Id.* Lastly, Plaintiff asserts that PA Nguyen's treatment notes provide objective supports for his disabling assessment. *Id.* at 11.

The Commissioner responds that the ALJ "accurately noted that [PA] Nguyen observed that Plaintiff's arthritic pain was triggered by heavy lifting or being on her feet more than eight hours per day." ECF No. 13 at 5 (citing AR 23, 651). The Commissioner continues that substantial evidence further supports that PA Nguyen found that Plaintiff's pain could be managed with medication. *Id.* (citing AR 23, 651).

On January 6, 2022, PA Nguyen completed a medical report form provided by Plaintiff. AR 650–52. PA Nguyen indicated that Plaintiff has diagnoses of "bipolar 2 disorder," psoriatic arthritis, anxiety, depression, sciatica, and uncontrolled hypertension. AR 650. PA Nguyen recorded that Plaintiff's symptoms include chronic back pain and joint pain of the knees, hands, and fingers from psoriatic arthritis. AR 650. PA Nguyen indicates that Plaintiff's "signs," including "relevant clinical findings, test results, etc." show pain of the joints and back on palpation, reduced range of motion, mildly reduced muscle strength (4/5) of the affected joints, and swelling. AR 650. PA Nguyen opined that Plaintiff would be expected to miss

1  one day of competitive employment per month due to the need for rest when her

2  pain is exacerbated, and that Plaintiff is limited to sedentary work.  AR 652.  PA

3  Nguyen further opined that Plaintiff would be off-task and unproductive twelve-to-

4  twenty percent of a forty-hour work week. AR 652.

5          The ALJ found PA Nguyen's opinion to be "not entirely persuasive."  AR 23.

6  ALJ Stallings reasoned, "The significant off-task limitation opined is not supported

7  by an explanation, and it appears inconsistent with Dr. Nguyen's [sic] observation

8  that the claimant's arthritic pain is triggered by activities such as heavy lifting or

9  being on her feet more than eight hours per day but can be managed with

10  medication."  AR 23 (citing AR 651).  The ALJ's finding that PA Nguyen's off-task

11  limitation opinion lacks an explanation is supported by PA Nguyen's medical report.

12  AR 652.  Moreover, elsewhere in the report, PA Nguyen wrote that Plaintiff can

13  manage her arthritis pain with medication and abstaining from heavy lifting and

14  being on her feet more than eight hours per day.  AR 652.  Since PA Nguyen does

15  not specify any symptoms other than Plaintiff's arthritis pain that could result in

16  Plaintiff being off task twelve-to-twenty percent of the workweek, it is reasonable

17  for the ALJ to consider PA Nguyen's other statements about how well managed

18  Plaintiff's pain symptoms are.  Moreover, substantial evidence supports the ALJ's

19  assessment of PA Nguyen's statement as persuasive in part and unpersuasive with

20  respect to the internal inconsistency of finding that Plaintiff's arthritis pain is

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S BRIEF ~ 14

managed by medication as long as Plaintiff avoids heavy lifting and standing or walking more than eight hours per day while also opining that Plaintiff would be off-task and unproductive twelve-to-twenty percent of the workweek.  AR 23, 651–52. Sedentary work does not allow lifting more than ten pounds and only occasional walking or standing, so PA Nguyen's reasoning supports only the sedentary work restriction that ALJ Stallings included in Plaintiff's RFC.  *See* 20 C.F.R. § 404.1567(a).  A further limitation is not supported anywhere in PA Nguyen's reasoning.  ALJs are permitted to discount a medical source statement for lacking sufficient explanation and based on internal contradictions.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (noting that "internal inconsistencies" within a physician's report constituted a legitimate basis for discounting the report); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (stating that the ALJ may "permissibly reject[] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.") (citations omitted). Therefore, the Court finds no error in the ALJ's assessment of PA Nguyen's opinion.

### Dr. Mozafari

Plaintiff also contests the ALJ's treatment of Dr. Mozafari and argues that the ALJ: "(1) failed to evaluate the consistency of supportability of Dr. Mozafari's opinion; (2) failed to even address the disabling aspects of Dr. Mozafari's opinion;

(3) provided no nexus between his cursory rationale and the rejection of Dr. Mozafari's specific limitations; and (4) failed to even discuss Dr. Mozafari's supportive treatment records."  ECF No. 9 at 12.  Plaintiff cites to Ninth Circuit authority requiring ALJs to provide more than a vague finding that a medical opinion is not supported by sufficient objective findings "'or [is] contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required . . . .'"  *Id.* at 13 (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).  Plaintiff adds, in summary, that "the ALJ improperly rejected Dr. Mozafari's disabling off-task and absenteeism limitations based on nothing more than waxing and waning symptoms."  *Id.* (citing *Garrison v. Colvin*, 759 F.3d 995, 1017–18 (9th Cir. 2014); *Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016)).  Plaintiff maintains that the ALJ's assessment of Dr. Mozafari's opinion was "particularly erroneous" for failing to mention Plaintiff's bipolar disorder or address Dr. Mozafari's supporting treatment notes.  *Id.*

The Commissioner counters that the ALJ was thorough in his assessment of Dr. Mozafari's opinion and identified "numerous instances" where Dr. Mozafari's opinion was inconsistent with other medical findings in Plaintiff's record.  ECF No. 13 at 7 (citing AR 24, 451–52, 657–65).  The Commissioner argues that what Plaintiff characterizes as waxing and waning symptoms was instead evidence that medical treatment successfully relieved Plaintiff's symptoms, which undermines

1  Plaintiff's claim of disability.  *Id.* at 8.  The Commissioner continues, "Moreover, to

2  the extent Plaintiff contends the ALJ did not sufficiently explore the supportability

3  factor, the Commissioner notes that Dr. Mozafari's opinion was provided on a four-

4  page check-box form devoid of specific objective medical findings in support of

5  such limitations." *Id.* (citing AR 653–56).

6      Dr. Mozafari completed a Mental Residual Functional Capacity Assessment

7  form for Plaintiff on January 19, 2022.  AR 653–56.  Dr. Mozafari assessed Plaintiff

8  as mildly limited in eight categories of mental activities, moderately limited in

9  fourteen categories, and markedly limited in two categories.  AR 653–54.  Dr.

10  Mozafari opined that, based on Plaintiff's cumulative limitations, she likely would

11  be off task and unproductive twelve to twenty percent of a work week and likely

12  would miss three days per month from a full-time work schedule.  AR 656.  Dr.

13  Mozafari did not provide any explanation for his check-box opinions on the form.

14  AR 653–56,

15      The ALJ found Dr. Mozafari's opinion "not persuasive," reasoning:

16  Moderate limitation in understanding, remembering, and applying
    information is not supported by findings from the consultative

17  examination, such as the claimant's intact memory and ability to follow
    a three-step command. A moderate limitation in the claimant's ability

18  to adapt is similarly not supported by the overall record, as discussed in
    connection with the "paragraph B" criteria. Meanwhile, a mild

19  limitation in interaction with others is not consistent with treatment
    notes and the observations of the consultative examiner regarding an

20  altered mood and affect; it is likewise not consistent with the claimant's
    description of self-isolating.

21

AR 24 (citing AR 451–52, 657–66).

As the Court already found, an ALJ may reject a medical source opinion for lack of explanation. *See Molina*, 674 F.3d at 1111. Toward this end, Plaintiff's argument that the ALJ relied on waxing and waning symptoms misses the point because Dr. Mozafari's opinion does not indicate what symptoms, if any, he based the assessed limitations on. *See* AR 653–56. Moreover, the ALJ provided reasons for finding Dr. Mozafari's opinion unsupported, including that the ALJ found that the record indicated only mild and moderate limitations for purposes of the "paragraph B" criteria at step three. AR 19, 24. With respect to interacting with others, the ALJ found that Plaintiff's record reflected a greater limitation than the Dr. Mozafari assessed, given Plaintiff's reported self-isolation. AR 19, 24, and 452. The Court finds that the ALJ provided specific reasons related to supportability and consistency in evaluating the persuasiveness of Dr. Mozafari's opinion and, therefore, finds no error with respect to this medical source.

### Dr. Dyck

Plaintiff argues that the ALJ relied on mere boilerplate findings and failed to address the consistency or supportability of Dr. Dyck's disabling assessment. ECF No. 9 at 15–16. Plaintiff further contends that the ALJ rejected Dr. Dyck's disabling opinion based on waxing and waning symptoms. *Id.* at 16.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S BRIEF ~ 18

1    The Commissioner responds that the ALJ relied on substantial evidence in

2    finding that Dr. Dyck's own findings did not support more than moderate

3    limitations.  ECF No. 13 at 9 (citing AR 24, 449–53).  The Commissioner continues

4    that the ALJ considered whether Dr Dyck's opinions were consistent with other

5    evidence of record and relied on substantial evidence in finding that they were not.

6    *Id.* at 9–10 (citing AR 24, 552, 570, 625; 20 C.F.R. § 404.1520c(c)(2)).

7    Dr. Dyck completed a mental evaluation of Plaintiff on August 28, 2020.  AR

8    449–53.  Dr. Dyck assessed Plaintiff as follows:

9    The claimant appears to have the clear ability to reason and understand.
     She does have some adaptation skills; however, she tends to become
10   easily overwhelmed. Remote memory is intact. Recent and immediate
     memory are intact. Sustained concentration and persistence are
11   adequate based on the brief concentration tasks of this evaluation. The
     claimant does describe difficulty in completing tasks in her home
12   environment, but describes these in part to her physical limitations.  She
     describes significant personal challenges in her personal life as well as
13   in [sic] prior work environment as a result of her mood. Her ability to
     interact with coworkers and the public is between moderate and
14   markedly impaired. Due to her mood symptoms and tendency to isolate
     herself from others, her ability to maintain regular attendance in the
15   workplace is between moderate and markedly impaired. Her ability to
     complete a normal workday or work week without interruption from
16   mood symptoms is again between moderate and markedly impaired.
     Her ability to deal with the usual stress encountered in the workplace is
17   markedly impaired if it involves being around other individuals. She
     appears to have physical limitations that would be better assessed by a
18   medical provider.

19   AR 452–53.

20

21

1    The ALJ found Dr. Dyck's opinion "not entirely persuasive." AR 24. The

2 ALJ reasoned that findings from Dr. Dyck's examination of Plaintiff do not support

3 more than moderate limitations, as the ALJ had discussed with respect to the

4 "paragraph B" criteria. AR 24. The ALJ further wrote, "Further, more than

5 moderate limitations are not consistent with subsequent treatment notes showing that

6 the claimant responded well to an adjustment in medication made in September

7 2020." AR 24.

8    The ALJ's finding that Dr. Dyck's own mental status examination of Plaintiff

9 does not support the disabling limitations in his assessment is supported by

10 substantial evidence. Dr. Dyck recorded that Plaintiff's general appearance, attitude,

11 general behavior, thought contend, stream of mental activity, orientation, memory,

12 fund of knowledge, concentration, abstract thinking, insight, and judgment were all

13 within normal limits. AR 451–52. The only remarkable finding was Plaintiff's

14 mood, which Plaintiff described as "a little stressed" while presenting as "sad, teary

15 and emotionally labile during the evaluation." AR 451. Dr. Dyck did not specify

16 what information he relied on in concluding that Plaintiff's ability to interact with

17 coworkers and the public, and to maintain regular attendance in the workplace, are

18 "between moderate and markedly impaired." AR 452–53. Moreover, as discussed

19 with respect to Dr. Mozafari, the ALJ referred back to his finding at step three that

20 the record indicated only mild and moderate limitations for purposes of the

21

"paragraph B" criteria at step three.  AR 19, 24.  Therefore, the ALJ demonstrated

that he relied on substantial evidence in considering the supportability of and

consistency of Dr. Dyck's opinion, and the Court finds no error in the ALJ's

treatment of this medical source.

In summation, the Court finds no error in the ALJ's treatment of medical

source opinions, denies judgment to Plaintiff on this issue, and grants judgment to

the Commissioner on the same.

### *Step Three*

Plaintiff argues that the ALJ failed to conduct a proper analysis and failing to

find Plaintiff disabled as meeting or equaling a listing.  ECF No. 9 at 16 (citing AR

19–21).  Specifically, Plaintiff argues that the ALJ needed to explain why he

concluded that section B of listing 14.09 was not met.  *Id.*  Plaintiff contends that the

fact section of her brief establishes that two or more organs/body systems are

involved in Plaintiff's flares of psoriatic arthritis, with musculoskeletal joint pain

and widespread skin rash, swelling, and pain/itching and also establishes that

Plaintiff has two or more constitutional signs or symptoms, with severe fatigue and

malaise.  *Id.* (citing AR 524).  Plaintiff continues that "[a]t the very least, remand is

required for elicitation of medical expert testimony[,]" but maintains that the

longitudinal record supports that Plaintiff is disabled pursuant to listing 14.09(B).

*Id.* at 17 (citing SSR 17-2).

1    The Commissioner responds that substantial evidence supports the ALJ's

2    finding that the requirements of listing 14.09(B) were not met and also supports the

3    ALJ's findings regarding the other listings he considered.  ECF No. 13 at 11.  The

4    Commissioner adds that "none of the medical records relied upon by Plaintiff show

5    inflammation or deformity in one or more major joints of an upper or lower

6    extremity involving two or more organs/body systems with one of the organs/body

7    systems involved to at least a moderate level of severity."  *Id.* (citing AR 377, 358,

8    454, 463–64, 490–93, 497–98, 505–06, 516, 524, 527, 613).  The Commissioner

9    further maintains that Plaintiff does not cite to medical records showing at least two

10   of the constitutional symptoms or signs, such as severe fatigue, fever, malaise, or

11   involuntary weight loss.  *Id.* (citing ECF No. 9 at 3–5; AR 358, 377, 454, 463–64,

12   490–93, 497–98, 505–06, 516, 524, 527, and 613).

13       At step three, the ALJ must assess whether the claimant has an impairment or

14   combination of impairments that meets or medically equals an impairment listed in

15   the Appendix to the federal regulations (the Listings), 20 C.F.R. Part 404, subpart P,

16   Appendix 1, and must satisfy the duration requirement, 20 C.F.R. §

17   416.920(a)(4)(iii).  The listings describe impairments that are so severe that they are

18   presumptively disabling, and, thus, further inquiry is unnecessary.  *Kennedy v.*

19   *Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013).  A claimant may not meet a listing

20   based solely on a diagnosis.  20 C.F.R. § 416.920(d).  A claimant must show that she

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S BRIEF ~ 22

meets all of the specified medical criteria for the listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Plaintiff contends that she meets listing 14.09(B).  Listing 14.09(B) requires inflammatory arthritis that involves various combinations of complications of one or more major peripheral joints or other joints. 20 C.F.R. pt. 404, subpt. P, app'x. 1, § 14.09(B).  A claimant may show that she meets the criteria of the listing under section 14.09(B) by showing "[i]nflammation or deformity in one or more major peripheral joints with" (1) "[i]nvolvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity; and (2) "[a]t least two of the constitutional symptoms or signs (severe fatigue, fever, malaise or involuntary weight loss)."  20 C.F.R. pt. 404, subpt. P, app'x 1, at § 14.09(B).

Plaintiff does not demonstrate that she meets or equals listing 14.09.  The evidence that she cites merely states that she had "the worst psoriasis flare she has ever had at the beginning of January [2020]" and that Plaintiff told her doctor that "she is very tired all the time."  AR 524.  Plaintiff also broadly refers the Court to the facts section of her initial brief, but, as the Commissioner indicates, those records do not compel a conclusion that Plaintiff's symptoms involved two or more organs/body systems with one of the organs/body systems with involvement of at least of the organs/body systems involved to at least a moderate level of severity.

*See, e.g.* AR 497 (October 2019 radiology report indicating "unremarkable" findings for the bones and soft tissues in Plaintiff's hands, and only "mild" degenerative changes in Plaintiff's hand joints); 514–17 (October 2020 treatment record indicating that Plaintiff reported that her joint pain was "much better" and did "not complain of swelling or stiffness").  Accordingly, the Court finds no error in the ALJ's determination that Plaintiff did not meet listing 14.09B.

### *Subjective Complaints*

Plaintiff argues that the ALJ did not provide clear and convincing reasons for discounting her subjective symptom testimony, as the ALJ "made no effort to ascertain the frequency or debilitating nature of [Plaintiff's] psoriatic arthritis flares, and he makes no findings regarding the disabling need to rest her hands after just 10 to 15 minutes of use due to swelling, pain, and stiffness."  ECF No. 9 at 18.  Plaintiff also faults the ALJ for "appear[ing] to fault" Plaintiff for discontinuing her medication for some periods without considering that "she did so . . . due to severe side effects such as hospitalization for edema of her right leg."  *Id.* (citing AR 454–64).  Further, Plaintiff cites the Court to a treatment note indicating that, on May 19, 2020, Plaintiff reported that one of her arthritis medications had ceased to work well for her.  ECF No. 14 at 8 (citing AR 519).

The Commissioner responds that the ALJ provided clear and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and

limiting effects of her symptoms inconsistent with the medical record when he

determined that Plaintiff's "psoriatic arthritis responded fairly well to treatment, and

Plaintiff's hypertension had been managed by her primary care provider." *Id.* (citing

AR 22). The Commissioner adds that Plaintiff "does not dispute that the ALJ

correctly noted that Plaintiff reported in October 2020 that she had stopped receiving

Enbrel injections due to the high copay, and she experienced increased pain and

swelling in the joints." *Id.* at 14–15 (citing AR 22, 511). The Commissioner

contends that the ALJ further "correctly noted that after Plaintiff obtained copay

assistance, she did not get any lab work done, so treatment stopped." *Id.* at 15

(citing AR 22, 512, 619). The Commissioner continues, "After Plaintiff resumed

taking medication, primary care treatment notes from September 2021 indicated that

Plaintiff's psoriatic arthritis pain was manageable with medication taken as needed."

*Id.* (citing AR 22, 635).

In deciding whether to accept a claimant's subjective pain or symptom

testimony, an ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d

1273, 1281 (9th Cir. 1996). First, the ALJ must evaluate "whether the claimant has

presented objective medical evidence of an underlying impairment 'which could

reasonably be expected to produce the pain or other symptoms alleged.'"

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.

Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the first test is met and there

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S BRIEF ~ 25

is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281.

The ALJ recognized that Plaintiff "testified that she is limited due to psoriatic arthritis flares that primarily affect her hands and feet, fibromyalgia, and anxiety and depression. On a function report, the claimant indicated that she is forgetful, exhausted, and unable to sit for long periods." AR 21 (citing AR 248–54). The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms "inconsistent because, as discussed below, the claimant's psoriatic arthritis has responded fairly well to treatment, and the claimant's hypertension has been managed by her primary care provider." AR 22. The ALJ discussed Plaintiff's treatment records for psoriatic arthritis and/or hypertension from approximately October 2019 through September 2020. AR 22 (citing AR 471, 485, 511–12, 524–27, 529–32, 535, 612, 619, 612, 635). The ALJ further reasoned that Plaintiff's mental health symptoms had been managed with medication prescribed by her primary care provider for most of the relevant period and that, when dealing with "worsening symptoms due to situational stressors," Plaintiff established care with a mental health specialist. AR 22 (citing AR 657–66). The ALJ observed that Plaintiff's treatment record indicates that she presented at her appointments fully oriented, with normal cognition and good insight, and declined counseling while

agreeing to follow-up care for stress and mood management.  AR 22 (citing AR 657–58).

Plaintiff argues that the ALJ should have considered whether Plaintiff discontinued her medication for some periods due to side effects and that Plaintiff reported that her arthritis medication was ineffective in May 2020.  ECF Nos. 9 at 18; 14 at 8 (citing AR 454–64, 519).  However, Plaintiff does not dispute that the record supports that she reported discontinuing the arthritis medication Enbrel "because of high co-pay" in October 2020 and that Plaintiff's care provider counseled her on receiving co-pay assistance.  AR 509–12.  Plaintiff further does not contest that the record supports that when Plaintiff returned for a rheumatology appointment after nearly nine months, in July 2021, she restarted Embrel.  AR 617–19.  At the July 2021 appointment, Plaintiff reported worsened arthritis symptoms during the period in which she had run out of Embrel due to not "do[ing] any of [sic] labs."  AR 619.  The Court finds no error in the ALJ's treatment of Plaintiff's subjective symptom complaints and instead finds that the reasons ALJ Stallings provided are clear, convincing, and supported by substantial evidence.

### Steps Four and Five

Plaintiff claims that the ALJ's determinations at steps four and five were erroneous for several reasons.  First, Plaintiff asserts that the ALJ erroneously categorized Plaintiff's secretary position as past relevant work by "improperly

includ[ing] her six-month composite job in asserting that she worked the requisite one year to learn the position."  ECF No. 14 at 9–10 (citing SSR 82-61; POMS DI § 25005.020(B); *Bouffiou v. Colvin*, No. 14-cv-5435-JRC (W.D. Wash., Jan. 22, 2015) (for the proposition that "the fact that the claimant sometimes performed cashier tasks during her past relevant work as a business owner did not support a finding that she had past relevant work as a cashier").  In addition, Plaintiff argues that the ALJ erred in posing incomplete hypotheticals to the VE.  *Id.* at 11.

At step four, a claimant bears the burden of showing that she "can no longer perform [her] past relevant work." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1520(e) and 416.920(e)).  "A claimant must be able to perform her past relevant work either as actually performed or as generally performed in the national economy." *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002).  The ALJ's decision regarding a claimant's past relevant work must be supported by substantial evidence, which "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" when considering "the record as a whole." *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993) (per curiam).

At step four, the ALJ found that Plaintiff "performed work as a secretary (DOT 201.362-030, sedentary, SVP 6 from January 2015 through June 2015 and as part of a composite job form [sic] mid-January 2019 to mid-July 2019."  AR 25

(citing AR 235).  The ALJ further found that the "vocational expert testified that an individual with the above residual functional capacity would be able to perform the job of secretary as it was actually performed by the claimant."  AR 25.  The VE testified that the "composite job and then the secretary standalone job would fit the set of limitations" that the ALJ articulated at the hearing.  AR 68.  Plaintiff contends that the time that Plaintiff performed the composite job combined with the time that she worked as a secretary adds up to merely one year, when SVP level 6 jobs such as secretary "require over one year of experience to learn."  ECF No. 14 at 10.  Plaintiff also asserts in reply that Plaintiff did not spend her whole six months in the composite job doing secretary work.  *Id.*  However, January through June 2015 until mid-January to mid-July 2019 may amount to more than 365 days, and Plaintiff does not demonstrate that the work she performed was for fewer days than 366.  Nor does Plaintiff dispute that she performed secretarial work throughout the six-month period during which she held the composite job, even if that work was performed alongside other duties.  Therefore, the Court does not find that Plaintiff has offered support for her argument that she did not perform secretarial work long enough to be considered past relevant work.  Moreover, the ALJ relied on substantial evidence in the form of the VE's testimony.  *See* AR 68.

Plaintiff's remaining arguments regarding the ALJ's analysis at steps four and five assume error in the treatment of medical source opinions and Plaintiff's

subjective symptom testimony, and the Court already found that the ALJ did not err on those grounds.

Consequently, the Court finds no error on this final ground and enters judgment in favor of the Commissioner.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes that the ALJ's decision is supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 9**, is **DENIED**.

2.  Defendant the Commissioner's Brief, **ECF No. 13**, is **GRANTED**.

4.  Judgment shall be entered for Defendant the Commissioner.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, enter judgment for the Defendant the Commissioner as directed, provide copies to counsel, and **close the file** in this case.

**DATED** October 19, 2023.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Senior United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S BRIEF ~ 30